# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WOODY OLSEN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANDREW M. SAUL, )<br>Commissioner of the Social )<br>Security Administration,[1] )<br>)<br>Defendant. ) | Case No. CIV-18-142-SPS |

## OPINION AND ORDER

The claimant Woody Olsen requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-one years old at the time of the administrative hearing (Tr. 34). He has a high school education and has worked as an electrician and chief electrician (Tr. 34, 55). The claimant alleges that he has been unable to work since May 16, 2015, due to degenerative disc disease, depression, anxiety, arthritis, sciatic nerve pain, thyroid problems, high blood pressure, and high cholesterol (Tr. 254).

## Procedural History

On May 26, 2015, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and on June 5, 2015, he applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 15, 200-12). His applications were denied. ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 14, 2017 (Tr. 15-25). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), except he needed to avoid work above shoulder

level (Tr. 19). The ALJ further found the claimant could perform simple, repetitive tasks, and relate to supervisors and co-workers superficially, but could not work with the general public (Tr. 19). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the national economy, *e. g.*, mail room clerk and laundry sorter (Tr. 23-24).

**Review**

The claimant contends that the ALJ erred by failing to: (i) properly analyze the opinion of consultative examiner Dr. Theresa Horton, and (ii) resolve a conflict between the vocational expert's ("VE") testimony and the Dictionary of Occupation Titles ("DOT"). The Court finds these contentions unpersuasive for the following reasons.

The ALJ found the claimant had the severe impairments of status post cervical spine surgery, degenerative disc disease of the lumbar spine, dysthymia (mild depression), and anxiety, but that his hypothyroidism, hypertension, and status post carpal tunnel syndrome were nonsevere (Tr. 17-18). The relevant medical evidence as to the claimant's mental impairments reveals that primary care physician, Dr. Charles Jackson, managed the claimant's medications for anxiety disorder from October 2013 through July 2016 (Tr. 409, 556-592). Primary care physician, Dr. Gloria Grim, treated the claimant for depressive disorder in July 2016 and August 2016 and for mood disorder in October 2016 (Tr. 493-97, 500-01). Dr. Grim's mental status examinations were normal despite the claimant's depressed, anxious, or agitated mood and affect (Tr. 494, 497, 501).

In addition to medication management through his primary care providers, the claimant also received counseling services from Jimmy Gardner, a licensed professional

counselor, for grief, depression, and social anxiety between August 2016 and October 2016 (Tr. 535-49).

On August 11, 2015, Theresa Horton, Ph.D. performed a consultative mental status examination of the claimant (Tr. 442-45). Dr. Horton observed that the claimant appeared somewhat anxious, dysthymic, and irritable/agitated (Tr. 444). She found the claimant's recall and memory were intact, his concentration was adequate, his judgment was appropriate, and his insight was poor (Tr. 444). Dr. Horton diagnosed the claimant with generalized anxiety disorder and dysthymia (late onset) (Tr. 444). She opined that the claimant appeared capable of understanding, remembering, and managing most simple and complex instructions and tasks, but likely would not adjust well into areas that were fast-paced and/or densely populated (Tr. 478). She also indicated that the claimant appeared to have difficulty with stress management, which may also affect his adjustment (Tr. 445).

On August 19, 2015, state agency psychologist Stephen Scott, Ph.D. completed a Mental RFC Assessment and found that the claimant was moderately limited in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, and interact appropriately with the general public (Tr. 84-85). Dr. Scott explained that the claimant could understand, remember, and carry out simple and some complex instructions with routine supervision; relate to supervision and a limited number of co-workers on a superficial work basis; and adapt to a work environment (Tr. 85). Phillip Massad, Ph.D. affirmed Dr. Scott's conclusions on review, but found the claimant was not significantly limited in his ability to maintain attention and concentration for extended periods (Tr. 100-02).

At the administrative hearing, the ALJ elicited testimony from a VE to determine if there were jobs a hypothetical person could perform with the following limitations:

> . . . limited to light work as described by the Commissioner. . .; is limited to simple, repetitive tasks; can relate to supervisors, coworkers and can sufficiently not work with the public, however when I say to supervisors and coworkers, I mean superficially, any job where there is not much requirement for direct or frequent supervision, however coworkers might be around and the individual wouldn't have to work together with them to accomplish tasks as part of a team. . .

(Tr. 56). The VE testified that such a person could not perform the claimant's past relevant work, but could perform the jobs of mail room clerk, DICOT § 209.687-026, and laundry sorter, DICOT § 361.687-014. (Tr. 57).

In his written opinion, the ALJ summarized the claimant's testimony and the medical records. In discussing the opinion evidence, he thoroughly summarized Dr. Horton's consultative examination findings and opinion but provided no analysis and did not assign it any specific weight (Tr. 21-22). The ALJ then gave great weight to the state agency psychologists' opinions because their assessments were consistent with Dr. Horton's consultative evaluation that showed the claimant had good memory/recall, adequate fund of knowledge, and average intelligence (Tr. 23).

The claimant contends that the ALJ failed to properly account for all the limitations in Dr. Horton's opinion, particularly her statements regarding pace and stress management. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d

1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

In this case, the ALJ thoroughly summarized Dr. Horton's opinion and referenced it favorably as discussed above. The claimant asserts that the ALJ rejected Dr. Horton's findings as to pace and stress, but this is not borne out in the opinion. Dr. Horton first stated unequivocally that the claimant could understand, remember, and manage most simple and complex instructions and tasks (Tr. 445). She then stated that the claimant would "likely" not adjust well into areas that are fast-paced and/or densely populated and that his difficulty managing stress "may" also affect adjustment, which is not the same as limiting the claimant to a slow pace and/or low stress because he was precluded from all fast-paced environments (Tr. 445). Furthermore, the ALJ noted all of Dr. Horton's statements, determined that the claimant's anxiety and dysthymia were severe impairments, adopted the state agency psychologists' opinions because they were consistent with Dr. Horton's opinion, and then *further* limited the claimant to simple,

repetitive tasks in the RFC (Tr. 17, 19, 21-22). *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946. Nonetheless, even if the ALJ did err in his analysis of Dr. Horton's opinion, such error is harmless here because the DOT description and worker functions for the laundry sorter job do not indicate that a fast pace is required or that any of the job functions occur on an assembly line. *See* DICOT § 361.687-014; *see also Kobylenski v. Colvin*, 2015 WL 345563, at *4 (W.D. Okla. Jan. 21, 2015) (unchallenged VE testimony that laundry sorter position does not require production line or assembly line work).

The claimant also asserts that the ALJ erred in identifying jobs he could perform because there was a conflict between the information provided and the DOT. Under Social Security Ruling 00-4p, "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she

resolved the conflict. The [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified.*" 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added]. Although the VE did not identify any conflict between her testimony and the DOT, the claimant contends there is a conflict with regard to the reasoning levels of each of the jobs identified. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

The mail room clerk job has a reasoning level of three, which is defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DICOT § 209.687-026. The reasoning levels for jobs in the DOT best identify the level of simplicity (or, conversely, complexity) associated with the job. *See Cooper v. Barnhart*, 2004 WL 2381515, at *4 (N.D. Okla. Oct. 15, 2004) ("The reasoning level, as identified by Plaintiff, appears more similar to whether or not a claimant has a limitation to performing only simple tasks.") [citations omitted]. As to this job, the Court agrees that there is a conflict the ALJ failed to identify. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that a limitation to "simple and routine work tasks" is "inconsistent with the demands of level-three reasoning.").

The remaining laundry sorter job has a reasoning level of two, which requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete

variables in or from standardized situations." DICOT § 361.687.014. The claimant asserts that this reasoning level is likewise incompatible with simple work. The Court finds, however, that a reasoning level of two *is consistent* with performing simple tasks, although a reasoning level of three is not, and that other courts have reached the same conclusion. *See Hackett*, 395 F.3d at 1176 ("This level-two reasoning appears more consistent with Plaintiff's RFC [limiting her to simple and routine work tasks.]"); *Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) ("Ms. Stokes' second argument is that the ALJ's limitation to simple, repetitive and routine work should be construed as a limitation to jobs with a reasoning-level rating of one. We disagree."). S*ee also Couch v. Berryhill*, 2017 WL 1194344, at *4 (E.D. Okla. March 13, 2017) ("In accordance with the court's findings in *Hackett*, a restriction to simple work is consistent with this reasoning level [of 2]."); *Goleman v. Colvin*, 2016 WL 3556958, at *4 (W.D. Okla. May 6, 2016) (where RFC limited claimant to "simple, routine, repetitive instructions," [t]he ALJ properly relied on the jobs identified by the VE with a reasoning level of two."). The Court thus finds that the identification of the mail room clerk job is harmless error, because there is still a job that has been identified that does not pose a conflict.[3] *See Stokes*, 274 Fed. Appx. at 684 (finding that any error on whether claimant could perform jobs was harmless error since there were still two jobs claimant could perform).

---

[3] The VE testified that there were 192,000 laundry sorter jobs in the national economy and the Court finds this amount constitutes a significant number (Tr. 57). *See Stokes*, 274 Fed. Appx. at 684 (where for the two remaining available jobs cited by the ALJ, there were 11,000 jobs regionally and 152,000 nationally, "we do not believe any reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country."). In any event, the claimant does not allege that the laundry sorter job does not exist in significant numbers.

**Conclusion**

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 12th day of September, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**